## YOUNG ET AL. VS. MITCHELL.

1. PLEADING: *Denials, how must be made.*
   A denial must be direct, not argumentative. The former rules of equity in regard to answering the allegations of a pleading are the same under the Code. He who submits to answer must do so fully and fairly.

2. CONFEDERATE MONEY: *Consideration.*
   Confederate Treasury notes, issued and circulated as money, were a good consideration for a contract,

3. EXECUTIONS: *Equitable title subject to.*
   The vendee of real estate holding a bond for title, has an equitable interest which is subject to executions.

APPEAL from *Hot Springs* Circuit Court in Chancery.

Hon. ——————————, Circuit Judge.

HOWARD, SPECIAL J.:

Belle J. Young and others, heirs of R. R. Young, filed their complaint in equity, in June, 1873, in the Hot Springs Circuit Court, against A. F. Mitchell and George W. Lawrence, in which it is stated:

That on the 29th day of July, 1863, Reed R. Young, father of the plaintiffs, purchased from Andrew F. Mitchell a tract of land in Hot Spring County, for the price of $5600, of which $5000 was paid, and the remainder to be paid when the land was surveyed and a deed made for the same; that at the time, Mitchell executed the following memorandum in writing:

" Received of R. R. Young, five thousand dollars in part pay for my tract or parcel of land, lying and being in the Magnet Cove, in Hot Spring County, and State of Arkansas,

and containing about three hundred and seventy-two acres, more or less—which I bind myself to make or cause to be made a good and sufficient title to the same at any time when I may be requested to do so, or as soon as I can do so.

" Given under my hand, this 29th July, 1863.

"A. T. MITCHELL."

That the said memorandum was not filed because it was burned when the court house of Hot Spring County was burned, in 1873 ; that the matter rested thus until 1866, when Young and Mitchell, having differed about the payment for the land, agreed to arbitrate, and did so, and that an award was made that Mitchell should have the lands surveyed and give to Young a deed, Young paying $650 with 6 per cent. interest, from July 29th, 1863, till paid, to be paid in one or three months ; that at the time fixed, Young was ready to pay, but Mitchell purposely avoided him ; that in 1867 or 1868, Young removed with his family to Tennessee.

That on the 18th day of January, 1868, the defendant, Lawrence, filed an account against Young, and an affidavit for attachment before a Justice of the Peace ; that an attachment was issued and levied upon this land by the Constable ; that the Justice made an order for the defendant to appear, and he not appearing, he entered judgment for Lawrence, who took a certified copy for the same, and on the 2d March, 1868, filed the same in the Circuit Clerk's office ; that in June, 1868, Lawrence had execution issued and levied upon this land, and in September following, at regular sale, the land was sold and bought by Lawrence for the pittance of $60.

The plaintiffs then charge the sale and deed void for several reasons, which will be noticed hereafter.

The bill then charges, that Young died November 4th, 1868, leaving these plaintiffs his only heirs ; that efforts have been made to settle the matter ; that the land was worth $3040 ;

that Lawrence's acts were fraudulent; that plaintiffs have always been ready to pay the $650; that Lawrence has been in possession since January 1st, 1869.

Plaintiffs pray that the attachment proceedings and sale of the land be decreed to be void; that the deed to Lawrence be cancelled, and that Mitchell be required to make to plaintiffs as heirs of Young, a good and sufficient deed to said lands.

To this bill, as exhibits, are copies of the proceedings before the Justice and the Sheriff's deed to Lawrence.

On the 29th of August, 1873, Lawrence answered and made his answer a cross-bill.

He admits the purchase, the correctness of the memorandum and of the description of the land, and of the statement of the arbitration and award. He admits suing Young, and all the steps taken in that suit and subsequent pleadings; but denies any irregularity or illegality; and states that the sale of the lands was open and public; that he purchased all of Young's interest and exhibits his Sheriff's deed. He admits Young's death, but does not know who are his heirs. He asks that his answer be taken as a cross-bill, and that upon payment by him of the residue of the purchase money, his title be confirmed, the Youngs and Mitchell be enjoined from further interfering with him in his possesion of the land, and for all other relief.

On the 3d of October, 1873, Mitchell filed his answer and made it a cross-bill.

He denies that Young purchased the tracts of land as alleged, or that he executed any such memoranda, or receipt, as is in said complaint set forth; he states that he entered into a verbal contract with Young for the purchase of these lands for the sum of $5650, in Confederate money, for which he gave him some kind of receipt, the terms of which he cannot remember; that Young failed to pay the $650; that Confederate money was illegal currency; that Young promised to pay the residue

ᵢmmediately, but has not done so or been willing to do so. That Young and himself agreed to submit their matters to arbitration, (he states the award with some variations, but attacks its validity ;) that Young did not pay the sum awarded at the time fixed or any other time, and that therefore he has no claim or interest of any kind in said lands ; denies that he avoided Young or that Young was ready at the time to pay the residue ; states that he has never received anything of the least value to him or any consideration whatever for said lands, and that the said $5000 was worthless ; that he has no knowledge of the death of Young, or who are his heirs.

Mitchell substantially admits the statements in the original bill, of the proceedings in the suit by Lawrence ; adopts the objections of the plaintiffs to the sale and deed, and states others which will be hereafter noticed.

The prayer of the cross-bill is that the original bill be dismissed, the deed to Lawrence set aside, etc,

At the March term, 1877, of the court below, the cause was submitted on these pleadings and exhibits, Lawrence's deed in testimony, an agreement that the copies of the arbitration papers filed as an exhibit were true and correct copies, and an agreement that the pleadings of each party were to stand as answers to the several cross bills filed.

The court, without making any special findings, decreed Young's original bill, and Lawrence's cross bill be dismissed, that Lawrence's deed be cancelled, Mitchell's title quieted, possession of the land given to Mitchell, and that he recover costs from the other parties. From this decree, both Young's heirs and Lawrence appeal.

The lands in controversy are east half of the southeast quarter of section 19 ; the west half of southwest quarter, section 20, and northwest quarter, section 20, township 3 south, range 17 west.

It is claimed by both Lawrence and Mitchell, that the plaintiffs cannot succeed, because their heirship to Young having been denied, it has not been proven. Lawrence says, whether said plaintiffs are the heirs he does not know, and calls upon them to make proof thereof.

Mitchell says he has no knowledge of the death of R. R. Young, or that complainants are his heirs, and denies the same, and asks that proof be made thereof.

Neither of these is a sufficient denial. The issue each was required to make, was not whether he knew these allegations to be true, or whether he was willing to admit them to be true, but whether they were in fact true ; * * if he was without legal information on the subject, he could have traversed them in that form. Gantt's Digest, 4569 ; *Trapnall* v. *Hill*, 31 Ark., 357.

There is much said in both the pleadings and arguments of counsel, of an arbitration of the matters in dispute between Mitchell and Young, and an award in October, 1866. But these proceedings appear never to have been completed, adopted, or acted upon, by either party in any particular. We deem it unnecessary to further refer to them.

The answer of Mitchell to the allegations of the bill of Young's heirs, is unsatisfactory and evasive. The complainants set out a memorandum, which is a receipt by Mitchell, of a portion of the purchase money, and an agreement " to make a good and sufficient title when requested so to do, or when he could do." They state that they cannot file this paper because it was placed among other papers, in an arbitration suit between Mitchell and Young, in the court house of Hot Springs County, and destroyed when that building was burned in the year 1873. Mitchell denies that Young purchased the land " as alleged in said complaint," or that he " executed any such memoranda or receipt as in said complaint set forth." He

says he does not know, nor has he any means of knowing whether this paper was burned. But he does say he made a verbal contract with Young, for the sale of these lands, that a portion of the purchase money was paid in confederate money, and that he gave to the agent of Young, a receipt of some kind in writing. showing that said nominal sum of five thousand dollars was paid on said tracts of land, but whether in said receipt said nominal sum of five thousand dollars was mentioned as five thousand dollars simply, or five thousand dollars in confederate money, he cannot recollect.

These denials and allegations are not such as are required. A denial must be direct, not argumentative. The former rules of equity with regard to answering the allegations of a pleading are the same under our system. He who submits to answer must do so fully and fairly. Any effort to escape from a direct answer is not tolerated. 1 Nash. Pl. and Pr. 175 ; Newman Pl. and Pr. 511, *et seq; Guynn, et al* v. *McCauley, et al*, 32 Ark. 105 ; Gantt's Digest, 4569.

But in direct connection with this manner of answering, Mitchell insists that what he received from Young was in "confederate money," that this was an illegal currency, that it was of no legal value whatever, and that it has never been of any value or benefit to him. He nowhere offers to return the currency : he does not ask for a rescision of any contract. He treats the entire transaction as a nullity : and, upon this ground of absolute failure of consideration, he appears to have relied for the relief asked by him from, and granted to him by the court below.

In a long and unbroken line of authorities from *Smith* v. *Thorington*, 8 Wall. 1, to *Williams* v. *Bruffey*, 6 Otto, (96 U. S.) 176, the Supreme Court of the United States has maintained the doctrine that notes issued by the confederate government, and actually circulating as money, supported the

consideration of contracts. In *Thorington* v. *Smith*, that court decided that a contract for the payment of confederate treasury notes, made between parties residing within the so-called confederate states, could be enforced in the courts of the United States, the contract having been made on a sale of property in the usual course of business.

In *Delmos* v. *Insurance Company*, 14 Wallace, 651, the court says : " This court has decided that a contract was not void because payable in confederate money ; and notwithstanding the apparent division of opinion on this question, in the case of *Hanauer* v. *Woodruff*, we are of opinion that on the general principle announced in *Thorington* v. *Smith*, the notes of the confederacy actually circulating as money at the time a contract was made, may constitute a valid consideration for such contracts.

In *Williams* v. *Bruffy*, the court says : " The same general form of government, the same general laws for the administration of justice, and the protection of private rights, which had existed in the.States prior to the rebellion, remained during its continuance and afterwards. As far as the acts of the States did not impair, or tend to impair, the supremacy of the national authority, or the just rights of citizens under the constitution, they are in general, to be treated as valid, and binding. As we said in *Horn* v. *Lockhart:* " The existence of a state of insurrection and war did not loosen the bands of society, or do away with civil government, or the regular administration of the laws. Order was to be preserved, poiice regulations maintained, crime prosecuted, property protected, contracts enforced, marriages celebrated, estates settled, and the transfer and descent of property regulated, precisely as in times of peace."

And this court, in a well considered and exhaustive opinion, said, in *Berry* v. *Bellows*, 30 Ark., 214 : "It may be safely

asserted that no court entitled to respect would now decide that when a creditor, acting for himself, accepted Confederate money in payment of a debt at any time during the war, when, and in a Southern State where it circulated as currency, such payment did not extinguish the debt."

There remain the matters disputed between the complainants and Lawrence. Young's heirs and Mitchell set up the following objections to Lawrence's title.

I.  The defendant, Young, had no such estate in said land as was subject to execution, being a mere equitable interest.

II.  The proceedings and judgment of the Justice of the Peace do not show the attached lands were within his teritorial jurisdiction.

III.  The return of the Constable does not show there was no personal estate within his township or county upon which to levy the attachment.

IV.  It does not appear from the Justice's transcript the account was filed before writ issued.

V.  The transcript of the judgment and proceedings in attachment does not show a writ was levied upon the lands mentioned in the Sheriff's deed to Lawrence.

VI.  There was no bond filed by defendant, Lawrence, as required by law before issuance of execution by Clerk of Hot Spring Court, and under which the Sheriff sold this land, as required by sec. 30, chap. 26, Gould's Digest.

VII.  No bond was at any time filed in the attachment suit before the Justice of the Peace, or in the Hot Spring Circuit Court, as is required before execution can issue.

VIII.  There was no advertisement as required by law of the sale under which Lawrence claims title.

IX.  In and by the face of said deed it appears that the levy, advertisement and sale of said lands were each and all on the same day.

X.   Said supposed legal proceedings and deed under which Lawrence claims are otherwise fatally defective and void.

It is only necessary to refer to our statute and the construction which this court has placed upon it to meet the first objection.   "Our statute is very comprehensive, and declares all real estate subject to execution, whereof the defendant, or any person for him is seized in law or equity.   The vendee of real estate holding a bond for title, is in equity considered as the real owner, whether he had paid the purchase money, or actually taken possession or not, subject only to the legal and equitable rights of the vendor for the unpaid purchase money. *Hardy* v. *Heard,* 15 Ark. 187 ; Gantt's Digest, 2630. Clearly in our above stated view of this contract, Young had an interest which could be sold.   He was in the condition of a vendee with bond for title.

Most of the objections relied on by the appellant can be disposed of easily. . The record of the proceedings shows that there was filed an account and an affidavit as required by the statute.

The plaintiff, Lawrence, seems to have complied with all the requirements of the statute in instituting and prosecuting his case.   The account was properly filed and the affidavit for an attachment was made.   The writ was properly issued.   The record is sufficient upon these points.

No bond was required to be filed with the Justice before an attachment could issue.   *Stewart* v. *Houston,* 25 Ark., 311.

It is objected that the levy in this case was made upon land without stating in the return of the Constable that there was no personal property which could be reached by the writ of attachment.   We are asked to say that this failure of the office to make that affirmative statement should invalidate everything done in the proceedings, and declare them void.   There is no statement that anything was improperly done.   It is not so

claimed. Simply the return does not so show. The statute is as follows :

"Whenever the Constable to whom any writ of attachment, issued by any Justice of the Peace, shall be directed, can find no personal property upon which to levy the same, he may and shall levy such writ upon any lands, tenements or town lots, belonging to the defendants in such execution, which may be subject to execution and make his return accordingly, describing in such return the lands, tenements or town lots, so levied upon." Gould's Dig. chap. 16, sec. 35.

In a former statute, upon attachments before Justices of the Peace, the Constable was authorized to attach slaves, when he could find no other property whereon to levy such attachment. In so making an attachment, he stated the fact, and that appears to have been sufficient.

It appears in this case that the Constable made a levy upon certain property, which he designates. It is necessary that he should show in his return, which has never been directly attacked affirmatively, that every provision of the statute has been strictly observed. We think, in this case, the officer has obeyed the requirements of the statute. Must he be held to have gone further? We think not.

The Supreme Court of Iowa in treating this question say, (in an opinion by a dissenting judge, which was afterwards adopted as the law) : "It is then stated, as a legal proposition, that it should affirmatively appear by the officer's return that the provisions of the statute had been strictly observed, as the jurisdiction of the court depends entirely upon a legal levy. The only return required by the act, is that the inventory and appraisement shall be annexed and returned with the writ. How then, can it be assumed that the return must show affirmatively that the provisions of the statute had been strictly observed? A legal levy is by no means dependent upon, or the sequence of, such a return. 3 C. Green's R., 398.

In construing a similarly worded statute, the Supreme Court of Kentucky, use this language. * * * * * * * * " The motion was made upon the ground that the officer had no right to levy upon slaves, when, as assumed, other personal property to a sufficient amount had been shown to him ; and, if it be conceded that the fifteenth section of the execution law, applies to attachments, it is only directory to the officer and does not render the levy either void or voidable."

In *Isham* v. *Downer*, 8 Conn., 282, the court in considering this question, where the court below had instructed that neither the plaintiff, nor the officer who served the plaintiff's attachment, was bound to take the personal estate of the debtor, but that the real estate was liable to be taken, notwithstanding his ownership and possession of personal estate, say ; " But it is said, that the statute contains a new and positive direction, that an attachment shall be served, by attaching the goods or chattels of the defendant, or if none can be found, by attaching the person or land of the defendant. If this construction be adopted, there must be a total absence of personal property, to justify taking the person or land of the defendant, or making any other service."

This court has in several cases stated the rule in this respect. *Rose* v. *Ford*, 2 Ark., 26 ; *Henry* v. *Ward*, 4 Ark., 150 ; *Elliott* v. *The Bank*, 4 Ark., 437 ; *McNabb* v. *The Bank*, 4 Ark., 555.

We are of the opinion, then, that the sale to Young was valid and upon good consideration ; that Young had such an interest in the lands as was subject to sale ; that Lawrence purchased the interest of Young ; that Mitchell is entitled to the balance of the purchased money ; namely, $600, with interest from July 29th, 1863, at the rate of 6 per cent. per year ; and that upon payment of this sum Lawrence should be decreed to have title to the lands and be quieted in the possession of the same.

Decree reversed and cause remanded for further proceedings in accordance with law, and not inconsistent with this opinion.